UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERA LUEDDE,<br><br>　　　　　　　　　Plaintiff,<br><br>　vs.<br><br>DEVON ROBOTICS, LLC, a Pennsylvania limited liability company, **JOHN BENNETT,** an individual, and **DOES 1 through 10**, inclusive.<br><br>　　　　　　　　　Defendants. | CASE NO. 10-CV-400W<br><br>**ORDER:**<br><br>**1) DENYING PLAINTIFF'S MOTION TO REMAND (DOC. NO. 4.)**<br><br>**2) GRANTING DEFENDANTS' MOTION TO DISMISS (DOC. NO. 3.)** |

Two motions are currently pending before the Court: (1) Plaintiff Tera Luedde's ("Plaintiff") motion to remand this case to San Diego Superior Court and; (2) Devon Robotics, LLC ("Devon") and John Bennett's ("Bennett") (collectively "Defendants") motion to dismiss. The Court decides these matters on the papers submitted and without oral argument. See S.D. Cal. Civ. R. 7.1(d.1) And for the reasons stated below, the Court **DENIES** Plaintiff's motion to remand (Doc. No. 4) and **GRANTS** Defendants' motion to dismiss. (Doc. No. 3).

I.　**BACKGROUND**

Plaintiff is a resident of the State of California who works as a sales person in the medical device sales industry. (Doc. No. 1; Ex. B2 [hereinafter "FAC"].) Devon is a

Pennsylvania-based limited liability company, organized and existing under the laws of the Commonwealth of Pennsylvania, with its principle place of business in Pennsylvania. (Doc. No. 1 at ¶ 5.) Bennet is a resident of Pennsylvania and the Chief Executive Officer of Devon. (FAC at ¶ 3.)

Beginning in 2005, Plaintiff was employed as a sales representative at ForHealth Technologies ("FHT"). (FAC at ¶ 7.) In June of 2009, Plaintiff entered discussions with Devon, a competitor of FHT, regarding a position in their company as a sales representative. (Id. at ¶ 8.) On June 11, 2009, Bennett interviewed Plaintiff by telephone. (Id. at ¶ 10.) During their conversation, Plaintiff told Bennett she would not leave FHT without a firm offer from Devon. (Id. at ¶ 12.) On June 17, 2009, Devon sent Plaintiff an employment offer via email with an anticipated start date of July 15, 2009. (FAC at ¶ 13.) Plaintiff accepted the offer by email that same day. (Id.) Soon after, Plaintiff resigned from her position at FHT. (Id.)

On July 2, 2009, Devon sent Plaintiff a proposed written agreement titled "Employment Agreement." (FAC; Ex. 1 [hereinafter "Agreement"].) The Agreement was to become effective on July 15, 2009, and to last for an initial term of one year. (Agreement at ¶ 6.) The Agreement contained a forum selection clause ("FSC") requiring all disputes brought by either party to be brought in the Commonwealth of Pennsylvania. (Agreement at ¶ 9.) Specifically, the FSC provided:

> Governing Law and Jurisdiction. The parties agree that this Agreement shall be governed and construed in accordance with the laws of the Commonwealth of Pennsylvania. With respect to and dispute brought by Employee against Company or any dispute brought by Company against Employee, or any combination thereof, Employee agrees to bring all judicial claims in, and only in, the Court of Common Pleas of Montgomery County, Commonwealth of Pennsylvania. The provisions of this paragraph nine (9) shall survive termination of this Agreement.

(Id.)

Plaintiff signed the Agreement on July 5, 2009, and returned it to Devon. (Doc. No. 3.) Devon retained, but did not sign the Agreement. (Id.)

In the days leading up to Plaintiff's anticipated start date, both parties acted in reliance on the Agreement. (FAC at ¶ 15.) Devon printed and provided Plaintiff with business cards. (*Id.*) Devon also provided Plaintiff with a Blackberry phone and a laptop computer which Plaintiff configured with the assistance of Devon's IT Department. (*Id.*) Devon's corporate travel department also arranged for Plaintiff's travel to Phoenix, Arizona, for appointments Plaintiff scheduled on July 20 and 21, 2009. (*Id.*) Meanwhile, Plaintiff purchased an external hard drive to transfer information from FHT to her new Devon laptop computer. (*Id.*) Plaintiff also received and completed a significant amount of new hire and payroll paperwork related to the position at Devon. (*Id.*)

On July 13, 2009, two days before Plaintiff's anticipated start date, John Seigel, Executive Vice President of Commercial Development, informed Plaintiff of a need to delay her start date due to cash flow constraints. (*Id.* at ¶ 17.) Devon told Plaintiff she should not expect to start earlier than September 1, 2009, and that even that date, as well as her position with the company, was far from certain. (*Id.*) On August 3, 2009, Plaintiff, through her counsel, sent a letter to Defendants accusing them of "intentionally misleading" Plaintiff and "stringing Plaintiff along" and threatened Defendants with "protracted public litigation." (Doc. No. 3; *Bennett Decl.* at ¶ 14.) Plaintiff also disclosed her efforts to return to her prior employer. (*Id.*) Bennet interpreted Plaintiff's actions as a termination of the Agreement. (*Id.* at ¶ 15.)

Ultimately, on November 17, 2009, Plaintiff filed this lawsuit against Devon alleging the following six causes of action: (1) Promissory Estoppel; (2) Fraud; (3) Negligent Misrepresentation; (4) Intentional Interference with Contractual Relationship; (5) Interference with Prospective Economic Advantage; and (6) Breach of Contract. (Doc. No. 1; Ex. A2 [hereinafter "Original Complaint"].) Bennett was not named as a party in the caption of the Original Complaint or in the Summons. Plaintiff asserts that Bennett had been inadvertently excluded. (Doc. No. 11 at 2.)

On November 25, 2009, Devon was served with the Summons and the Original Complaint. (Doc. No. 1; Ex. A1.) On December 14, 2009, Plaintiff filed the FAC in

1 San Diego Superior Court. In contrast to the Original Complaint, the FAC named
2 Bennett as a party to the action. On February 1, 2010, Bennett was served with the
3 Summons and the FAC. (Doc. No. 1; Ex. B1.)

4 On February 19, 2010, Defendants filed a joint Notice of Removal on the basis
5 of diversity jurisdiction. (Doc. No. 1.) Plaintiff responded by filing a motion to remand
6 to state court. (Doc. No. 4.) Defendant opposes the remand and filed a motion to
7 dismiss. (Doc. No. 3.) Plaintiff opposes the motion to dismiss. (Doc. No. 7.)

## II. LEGAL STANDARD

### A. MOTION TO REMAND

An action is removable to federal court only if it might have been brought there originally. See 28 U.S.C. § 1441(a). Notice of removal to federal court must be filed within thirty days of service of the initial pleading on the defendant. 28 U.S.C. § 1446(b). Pursuant to the rule of unanimity, where there are multiple defendants, all defendants must unite in a petition for removal to federal court. See Chi. Rock Island & Pac. R.R. Co. v. Martin, 178 U.S. 245, 248(1900). If a defendant's removal notice fails to meet the procedural requirements of section 28 U.S.C. § 1446(b), such as timeliness or unanimity, a court may remand the action upon a plaintiff's timely motion. See 28 U.S.C. § 1447(c).

### B. MOTION TO DISMISS

Rule 12(b)(3) provides that a court may dismiss a claim for improper venue. Fed. R. Civ. P. 12(b)(3). Once venue is challenged, the burden is on the plaintiff to show that venue is properly laid. Bohara v. Backus Hosp. Medical Benefit Plan, 390 F. Supp. 2d 957, 960 (C.D. Cal. 2005); Piedmont Label Co. v. Sun Garden Packing Co., 598 F.2d 491, 496 (9th Cir. 1979); King v. Vesco, 342 F. Supp. 120, 125 (N.D. Cal. 1972). A motion to dismiss pursuant to a forum selection clause in a contract is to be treated as motion to dismiss for improper venue under Rule 12(b)(3). Argueta v. Banco Mexicano

1  S.A., 87 F.3d 320, 324 (9th Cir. 1996). The enforceability of a forum selection clause
2  is determined by federal law. American Home Assurance Co. v. TGL Container Lines,
3  Ltd., 347 F. Supp. 2d 749, 755 (N.D. Cal. 2004). Forum selection clauses are prima
4  facie valid and should not be set aside unless it can be shown that such a provision is
5  unreasonable under the circumstances. Argueta, 87 F.3d at 325.

## III.   DISCUSSION

Defendants timely filed their motion to dismiss for improper venue. (Doc. No. 3.) Shortly thereafter, Plaintiff filed her motion to remand the case to San Diego Superior Court. (Doc. No. 4.) The Court set the motions for a concurrent hearing date and is now prepared to rule on each of them, in the order that makes the most procedural sense.

### A. Plaintiff's Motion to Remand Is Denied

Plaintiff's sole ground for remand is that Defendants' Notice of Removal was untimely because it was filed more than thirty days after the service of the Original Complaint on the "first-served" defendant—Devon. In opposition, Defendants argue that the Notice of Removal was timely because it was filed within thirty days after service of the FAC on the "last-served" defendant—Bennett.

There is currently a split of authority on the construction of 28 U.S.C. § 1446(b) when applied to multiple defendants. See United Computer Systems, Inc. v. AT & T Corp., 298 F.3d 756, 763 n.4 (9th Cir.2002)(recognizing a split of authority among Circuits applying first-served and last-served rules).

The first-served rule holds that the thirty day removal period in a case involving multiple defendants commences with service on the first defendant. The last-served rule allows each individual defendant in a multi-defendant dispute thirty days to file the Notice of Removal after being served with the complaint. In the instant case, application of the first-served rule would make Defendants' removal untimely. In

1  contrast, the parties appear to agree that application of the last-served rule would make
2  Defendants' removal timely, and thus, proper.

3        In support of her motion to remand, Plaintiff points to courts that have applied
4  the first-served rule. See <u>McAnally Enterprises, Inc. v. McAnally</u>, 107 F.Supp.2d 1223,
5  1226-28 (C.D. Cal. 2000); <u>Teitelbaum v. Soloski</u>, 843 F.Supp. 614, 615 (C.D. Cal.
6  1994). In contrast, Defendants offer authorities which have adopted the last-served rule.
7  See <u>Marano Enterprises of Kansas v. Z-Teca Restaurants, L.P.</u>, 245 F.3d 753, 757 (8th
8  Cir. 2001); <u>Brierly v. Alusuisse Flexible Packaging, Inc.</u>, 184 F.3d 527, 533 (6th Cir.
9  1999); <u>Ford v. New United Motors Mfg.</u>, 857 F.Supp. 707, 709 (N.D. Cal. 1994).

10        The Ninth Circuit has refrained from speaking on this issue. See <u>United
11  Computer Sys. v. AT & T Corp.</u>, 298 F.3d 756, 763 (9th Cir. 2002) (noting a split of
12  authority on the issue but refraining from expressing an opinion on "the propriety of
13  either rule.")  However, recent rulings suggest a trend in favor of adopting the last-
14  served rule. <u>See</u> e.g. <u>Bonner v. Fuji Photo Film</u>, 461 F.Supp.2d 1112, 1117 (N.D. Cal.
15  2006). Significantly, a fellow district court in the Southern District of California District
16  Court has recently adopted the last-served rule. <u>Smallwood v. Allied Pickfords, LLC</u>,
17  WL 3247180 *6–7 (S.D. Cal. Sept. 29, 2009).  Having considered the reasoning of
18  courts adopting both rules, this Court agrees with Judge Moskowitz that the last-served
19  rule constitutes the better approach. <u>Id.</u>

20        First, the plain language of Section 1446(b) suggests each defendant should be
21  allowed thirty days to file a Notice of Removal. <u>Id.</u>  Adopting Plaintiff's position "would
22  require [courts] to insert 'first' before 'defendant' in the language of the statute." <u>Brierly
23  v. Alusuisse Flexible Packaging, Inc.</u>, 184 F.3d 527, 533 (6th Cir.1999).  Second,
24  Congress intended the removal process to protect defendants.  Allowing Plaintiff to
25  avoid removal by waiting to amend their Complaint and then serve Bennett would
26  eviscerate that protection. See <u>McKinney v. Board of Trustees of Maryland Community
27  College</u>, 955 F.2d 924, 928 (4th Cir.1992) (agreeing with the district court's opinion
28  that "[Congress] did not extend such protection with one hand, and with the other give

plaintiffs a bag of tricks to overcome it.").

Third, despite Plaintiff's assertion to the contrary, the last-served rule in no way affects the rule of unanimity. A first-served defendant who fails to exercise his right of removal initially, may nonetheless be persuaded to consent to removal by a later-served defendant. See Bonner, 461 F.Supp.2d at 1118. On other hand, if an earlier-served defendant prefers the state forum, he may simply refuse to consent to the later-served defendant's notice of removal. See Marano Enterprises of Kansas v. Z-Teca Restaurants, L.P., 254 F.3d 753, 756 n. 6 (8th Cir.2001).

Lastly, the last-served rule does not hinder early resolution of forum disputes. Smallwood, WL 3247180 *7; citing McKinney, 955 F.2d at 927. In fact, as Judge Moskowitz noted, "the last-served rule may encourage plaintiffs to serve all defendants promptly and 'minimize the uncertainties that may arise from later adding defendants.'" Smallwood, WL 3247180 *7; quoting Smith v. Mail Boxes, Etc., 191 F.Supp.2d 1155, 1161 (E.D. Cal. 2002).

Here, the first-served defendant, Devon, was served with the Summons and Original Complaint on November 25, 2009. (Doc. No. 1; Ex. A1.) Plaintiff's argument that Bennett was inadvertently excluded from the caption and summons of the Complaint is understandable, but can not be given legal effect. On February 1, 2010, the last-served defendant, Bennett, was served with the Summons and the FAC. (Doc. No. 5.) On February 19, 2010, Defendants jointly filed Notice of Removal. (Doc. No. 1.) As such, applying the last-served rule, Defendants' Notice of Removal was timely and unanimous, and thereby satisfies the procedural requirements of 28 U.S.C. § 1446(b).

Accordingly, the Court **DENIES** Plaintiff's motion to remand this case to state court pursuant to 28 U.S.C. § 1447.

### B. Defendants' Motion to Dismiss For Improper Venue is Granted

Having declined to remand this case to state court, the Court will now address

the merits of the pending motion to dismiss.

Defendants have moved to dismiss the entire lawsuit for improper venue pursuant to Fed. R. Civ. P. 12(b)(3). Specifically, Defendants argue that the FSC contained within the Agreement required all judicial claims brought by either party to be brought in, and only in, the Commonwealth of Pennsylvania. (*Agreement* ¶ 9.) Defendants contend that this Court should enforce the FSC because all the causes of action asserted by Plaintiff arise out of the Agreement.

In opposition, Plaintiff argues the FSC is invalid because Defendants did not sign or perform under the Agreement. (Doc. No. 7.) In the alternative, Plaintiff argues that the FSC is unreasonable. (Doc. No. 7.) Specifically, Plaintiff contends the Agreement was entered into under unequal bargaining power and did not give Plaintiff adequate notice of the FSC. (Id.) Additionally, the expense and inconvenience Plaintiff will incur as a result of litigating far from her home makes the FSC unreasonable. (Id.)

In Reply, Defendants argue that Plaintiff should not be allowed to assert a breach of contract claim—based on the Agreement—while simultaneously disavowing the validity of the same Agreement in an effort to circumvent its FSC. They also assert that the FSC is both fair and reasonable. (Doc. No. 10.) For the reasons cited below, the Court agrees with Defendants that the FSC contained within the Agreement is valid and not unreasonable.

**1. The Agreement's Forum Selection Clause Is Valid**

Parties may designate the forum in which any litigation is to take place, and litigation commenced elsewhere may be subject to dismissal for improper venue. Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585 (1991). It is immaterial that one party fails to sign a contract if the agreement is signed by the other party, the non-signing party accepts the contract, and both parties act in reliance on it as a valid contract. J.A. Jones Const. Co. v. Plumbers and Pipfitters Local, 568 F.2d 1292, 1295 (9th Cir. 1978).

Plaintiff signed and returned the Agreement to Defendants on July 5, 2009. (Doc.

No. 3.) It is immaterial to the present analysis that Defendants did not sign the Agreement, or that Devon attempted to shift the official start date, since Devon's conduct indicates it accepted the Agreement and both parties acted in reliance upon it. After receiving the signed Agreement, Devon; (1) transmitted new hire and payroll paperwork to Plaintiff; (2) ordered and purchased business cards for Plaintiff; (3) provided Plaintiff with a Blackberry and a laptop computer and; (4) booked travel for Plaintiff's sales appointments. (Doc. No. 10.) Meanwhile, Plaintiff; (1) completed paperwork for Devon; (2) configured her Blackberry and laptop computer with the assistance of Devon's IT Department; (3) purchased an external hard drive to transfer information from FHT to her laptop computer and; (4) scheduled and confirmed sales appointments. (FAC at ¶ 15.)

More telling, Plaintiff admits—through her own breach of contract claim— the validity of the Agreement containing the FSC. See (Id. at ¶ 52) ("Devon and [Plaintiff] entered into a contract for the term of one year. . . ."); (Id. at ¶ 53) ("Devon breached the agreement by. . . ."); (Id. at ¶ 54) (Plaintiff "performed all obligations required of her under the contract. . . ."); (Id. at ¶ 55) (Plaintiff seeking damages for one year "based upon the terms of the contract. . . .") Beyond the logical impact of these allegations, Plaintiff should be aware that allegations in a complaint are considered judicial admissions and are binding upon the party that made them. Hakopian v. Mukasey, 551 F.3d 843, 846 (9th Cir. 2008); see also Am. Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir.1988).

In sum, Plaintiff signed that Agreement and both parties acted in reliance upon it. Even if that were not enough, Plaintiff has admitted that the Agreement was a valid contract between the parties. As such, the Court finds that the FSC contained in the Agreement is valid and binding upon the parties unless it is deemed unreasonable.

### 2. The Agreement's Forum Selection Clause Is Not Unreasonable

Forum selection clauses are prima facie valid, and are enforceable absent a strong

1 showing by the party opposing the clause that enforcement would be unreasonable. 2 Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 514 (9th Cir. 1988); citing 3 M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972).  A forum selection clause 4 is unreasonable if; (1) its incorporation into the contract was the result of fraud, undue 5 influence, or overweening bargaining power; (2) the selected forum is so "gravely 6 difficult and inconvenient" that the complaining party will "for all practical purposes be 7 deprived of its day in court;" or (3) that enforcement of the clause would contravene a 8 strong public policy of the forum in which the suit is brought. Argueta v. Banco 9 Mexicano, S.A., 87 F.3d 320, 325 (9th Cir. 1996) (internal citations omitted).

10 Plaintiff argues that the FSC within the Agreement is unreasonable because it did 11 not give Plaintiff adequate notice she was agreeing to Pennsylvania jurisdiction and was 12 incorporated into the form contract as a result of unequal bargaining power.

13 In determining whether there was "fraud, undue influence, or overweening 14 bargaining power" in a non-negotiated forum selection clause, the court must decide 15 whether the clause was reasonably communicated to the challenging party. See Wallis 16 v. Princess Cruises, Inc., 306 F.3d 827, 835 (9th Cir. 2002).  The court should take into 17 account the clause's physical characteristics and whether the plaintiff had the ability to 18 become meaningfully informed of the clause and to reject its terms. Id. at 835-6. A 19 forum selection clause contained within a form contract is not unreasonable because it 20 was entered into between an individual and a company. See Carnival, 499 U.S. at 590 21 (upholding a forum selection clause contained in a form agreement between individual 22 passengers and company cruise line).  The conditions of a form contract may be 23 enforceable even if not read by the challenging party, so long as that party was afforded 24 the opportunity to do so. See Deiro v. American Airlines, Inc., 816 F.2d 1360 (9th Cir. 25 1987) (holding the passenger of a common carrier contractually bound by the fine-print 26 liability limitations in the passenger ticket).

27 After reviewing the Agreement, the Court finds Plaintiff had adequate notice of 28 the FSC, which was written in plain English and in the same size font as all other

provisions contained in the five-page Agreement. (Agreement at ¶ 9.) Moreover, Plaintiff had the opportunity to read and request changes to the FSC before signing the Agreement. (Doc. No. 3.) Plaintiff's attempt to paint herself as naive in regards to the law is completely unavailing. By her own description, Plaintiff is a highly experienced sales representative, who made more than a quarter of a million dollars in 2008, and was being courted by multiple robotics corporations. (Doc. No. 7 at 2.)

Plaintiff also reserved the power to walk away from negotiations with Devon at any time if she was concerned about any of the clauses within the Agreement. Instead, Plaintiff admits she signed the Agreement voluntarily, mailed it to Devon, and began her own performance. (FAC at ¶ 14.) In light of the plainly visible physical characteristics of the FSC, and the context under which the Agreement was entered into, the Court finds the FSC was meaningfully communicated to the Plaintiff and not entered into under "fraud, undue influence, or overweening bargaining power." Argueta, 87 F.3d at 325.

Plaintiff next alleges that the expense and inconvenience she will incur from litigating in Pennsylvania should render the FSC unreasonable. However, in deciding whether a mandatory forum selection clause effectively deprives the complaining party of its day in court, the court does not engage in a traditional forum non conveniens balancing of interest test. See Docksider, Ltd. v. Sea Technology, Ltd., 875 F.2d 762, 764 (9th Cir. 1989). Rather, where the parties have contractually agreed upon a designated forum, distance and cost are not the test. See Carnival, 499 U.S. at 594-95 (rejecting evidence that respondents were physically and financially incapable of litigating in the selected forum and enforcing the forum selection clause). Instead, the issue is fundamental fairness. Id. at 595. Plaintiff was clearly aware that Devon was headquartered in Pennsylvania. And although it may be true that litigating her claims in Pennsylvania might be less convenient for her than California, Plaintiff has failed to establish that the contractually agreed upon forum would be unsuitable or that would effectively rob her of her day in court. Indeed, without evidence to the contrary, the

Court is confident that the Court of Common Pleas of Montgomery County can provide an adequate forum for Plaintiff's claims. (*Agreement* at ¶ 9.)

Lastly, Plaintiff has not demonstrated the FSC contravenes any relevant California public policy. Plaintiff's reference to California Labor Code Section 923, which applies to collective bargaining, is misplaced and irrelevant to the instant Agreement. Furthermore, Plaintiff agreed that any disputes arising out of the Agreement would be governed and construed in accordance with the laws of the Commonwealth of Pennsylvania. (*Agreement* at ¶ 9.)

In sum, the Court concludes that Plaintiff has not satisfied the "heavy burden of proof" required to set aside the FSC. See Carnival, 499 U.S. at 595.

Accordingly, the Court **GRANTS** Defendants' motion to dismiss all claims for improper venue pursuant to Fed. R. Civ. P. 12(b)(3).

II. CONCLUSION

For the reasons stated above, Plaintiff's motion to remand is **DENIED** (Doc. No. 4) and Defendants' motion to dismiss is **GRANTED.** (Doc. No. 3.)

**IT IS SO ORDERED.**

DATED: July 2, 2010

_____
Hon. Thomas J. Whelan
United States District Judge